```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FRANCIS LIRIANO, pro se,                   :
                                           :         **MEMORANDUM & ORDER**
                    Petitioner,            :
                                           :         07-CV-2092 (DLI)(JMA)
            -against-                      :
                                           :
JOHN W. BURGE, Superintendent,             :
Elmira Correctional Facility,              :
                                           :
                    Respondent.            :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* petitioner Francis Liriano[1] was convicted in the New York State Supreme Court, Kings County, of three counts of robbery in the first degree under N.Y. PENAL LAW § 160.15(4), one count of robbery in the second degree under N.Y. PENAL LAW § 160.10(1), and one count of criminal possession of a weapon in the second degree under N.Y. PENAL LAW § 265.03(2). (Pet. 1; *see also* Docket Entry No. 10, Ex. B ("Def./Appellant's Br.") at 2.) On May 17, 2007, Petitioner timely filed the instant petition pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus on the ground that he was denied his due process right to a fair trial in violation of the Fourteenth Amendment. Specifically, Petitioner claims that, "[i]n her summation, the prosecutor attempted to arouse the jurors['] sympathies, mischaracterized the defense and impugn[ed] counsel's integrity, repeatedly vouch[ed] for her witnesses' testimonies, shift[ed] the burden of proof and encourage[ed] the jurors to view the evidence of each crime cumulatively instead of separately." (Pet. 6; *see also* Docket Entry No. 7 ("Reply") at 3.) The Kings County District Attorney, as counsel for Respondent, opposes this claim. (*See generally* Docket Entry No. 4 ("Resp.").) For the reasons set forth below, the petition is denied.

---

[1] Petitioner stated at trial that his true name is Ceasar Perez. (Tr. 488.)

## I. BACKGROUND

### A. The Four Robberies[2]

On December 29, 2002, at approximately 10:15 p.m., Marta Mera and Yanina Mejia were working as cashiers at B&N World Communications in Brooklyn, New York, when Petitioner and another man entered. (Tr. 20–24, 385–87.) Mera recognized Petitioner because she had seen him earlier talking to friends outside the store. (Tr. 24.) The men demanded money from Mera as one of them pointed a handgun at Mejia. (Tr. 26–27, 388–89.) Petitioner then took the money from a drawer while the other man continued threatening Mejia with the handgun. (Tr. 28–29.) The other man then took money from Mejia's cash register, demanded the cassette used in the store's security camera, and told Mera that he would shoot Mejia if Mera did not comply. (Tr. 29–31.) Mera complied, and the two men left with the videotape and approximately $1,800.00. (Tr. 31–32.)

On December 31, 2002, Elvia Lopez was working as a cashier at Victoria Records in Brooklyn, New York. (Tr. 55–57.) At approximately 10:00 p.m., Petitioner approached Lopez at her counter and attempted to buy a CD while another man stood at the door; as Petitioner did not have enough money, Lopez told him to come back the next day. (Tr. 58–62.) Petitioner then demanded the CD, and when Lopez refused, Petitioner pointed a pistol at her and told her to open the cash register. (Tr. 65–67.) Lopez did so, and Petitioner took the money. (Tr. 67–68.) When Petitioner demanded the videotape from the surveillance camera, Lopez responded that she was unaware if the store had one. (Tr. 68–69.) Petitioner then told her not to call the police,

---

[2] The facts set forth in this section were established by testimony credited by the jury at trial, and are, accordingly, beyond the scope of federal habeas review. *See Rodriguez v. Hoke*, 1996 WL 1088919, at *3 (E.D.N.Y. June 19, 1996) (citations omitted).

and said he would come back and kill her if she did. (Tr. 69.) Petitioner and the other man then left with approximately $1,200.00. (Tr. 69–70.)

On January 12, 2003, Carolina Aguilar was working as a cashier in the office of American Multi-Services, a call center in Brooklyn, New York. (Tr. 109, 122.) At approximately 9:40 p.m., Petitioner, whom Aguilar had previously seen on the street, and who had been in the call center the day prior and earlier that evening, entered, and returned to the same booth he had used before. (Tr. 116, 124–32.) Petitioner then left the booth, approached the front office, and, as Aguilar opened the office door, pulled it open from the other side, grabbed her, and pointed a pistol at her left side. (Tr. 133–34.) Aguilar screamed and fell to the ground, at which point Petitioner pulled her up, pointed the pistol at her again, told her that "he wanted the money," and told her not to scream or push any buttons "because he was going to kill [her]." (Tr. 134–36.) Aguilar opened the cash register, and Petitioner took all of the bills. (Tr. 138.) Petitioner then demanded more money. (Tr. 139.) Aguilar had previously placed some money inside envelopes, which she ripped open and gave to Petitioner. (Tr. 139–41.) Petitioner then told Aguilar that he wanted the cellular phones in the counter. (Tr. 141.) With Petitioner still pointing the pistol at her side, Aguilar walked to the counter and opened its display case, from which Petitioner took the cellular phones. (Tr. 142–43.) Petitioner then put his pistol in front of Aguilar's face, threatened to kill her if she told anyone about the robbery, and left the store. (Tr. 144.)

On February 8, 2003, Sonia Nunez was working as a cashier at Llamados International, another call center in Brooklyn, New York. (Tr. 191–92.) Four customers were in the store, including Petitioner, whom Nunez recognized because she had seen him there two or three times previously. (Tr. 191–93.) At approximately 10:00 p.m., after Nunez had locked the front door and was passing by Petitioner's booth, Petitioner grabbed her from behind and threw her to the

floor. (Tr. 194–96.) Aiming a pistol at her chest, Petitioner told Nunez "not to cry," and to "go for the money." (Tr. 197.) Nunez led Petitioner to the money, which Petitioner took and put in his pants. (Tr. 199.) As Petitioner was taking the money, Carlos Llanos, a customer at the store, approached and asked Nunez if the phone he had been using was broken. (Tr. 224–26.) Nunez silently mouthed words to Llanos, and he repeated his question twice more. (Tr. 226.) When Nunez responded to Llanos' final inquiry by looking sideways at Petitioner, Llanos left the call center, realizing that something was wrong. (Tr. 226–27.) He located three police officers nearby and led them back to Llamados International, from which Petitioner was just exiting. (Tr. 201, 227–30, 246–48.) The officers arrested Petitioner and searched him, finding a loaded handgun and $2,233.00 on his person. (Tr. 250.) After Petitioner was read his *Miranda* rights, he made a statement in which he admitted to the robbery of Llamados International. (*See* Tr. 342–45.)

Other officers noted the similarities between the robberies, and arranged for Mera, Lopez, and Aguilar to view Petitioner in line-ups; all three women identified him as the perpetrator in their respective robberies. (Tr. 281, 284–301.) At trial, Petitioner took the stand in his own defense and denied participating in all four robberies.[3] He claimed that, at the time of his arrest, he had been standing on the street corner, examining a lamppost for apartment advertisements, and that the statement confessing to the robbery of Llamados International had been fabricated by the police. He further claimed that the handgun seized from his person at that time was one he had found in a trash can, fully loaded, and subsequently carried for his own protection. (*See* Tr. 474–523.)

The jury convicted Petitioner on five of the six counts charged in the indictment (Tr. 682, 685; *see also* Pet. 1.) Taking into account Petitioner's status as a first-time offender, the trial

---

[3] At sentencing, however, Petitioner stated: "I regret everything I have done." (Sentencing Tr. 6.)

4

court subsequently sentenced Petitioner to a determinate sentence of twelve years of imprisonment and five years post-release supervision. (Sentencing Tr. 8–9; *see also* Pet 1.)

### B. Post-Trial Procedural History

On August 5, 2005, Petitioner appealed to the Appellate Division, Second Department of the New York State Supreme Court ("Appellate Division"), arguing that his conviction should be overturned due to violations of his Fourteenth Amendment due process rights. (Def./Appellant's Br. 34–36.) Specifically, he argued that the prosecutor's summation improperly: (1) aroused jurors' sympathies; (2) mischaracterized the defense; (3) vouched for the People's witnesses; (4) shifted the burden of proof to Petitioner; and (5) suggested that each crime be viewed cumulatively, not separately. (*Id.* at 34.)

The Appellate Division denied Petitioner's appeal, finding that these arguments were "unpreserved for appellate review." *People v. Liriano*, 27 A.D.3d 578 (2d Dep't 2006) (citing N.Y. CRIM. PROC. LAW § 470.05(2)). The Appellate Division held that, even if Petitioner's arguments had been preserved, the trial court's curative instructions were sufficient to "dispel[] any alleged prejudice," and further held that "any error resulting from the prosecutor's summation was harmless," "in light of the overwhelming evidence of [Petitioner]'s guilt." *Id.* On July 7, 2006, the New York State Court of Appeals denied Petitioner's application for leave to appeal. *People v. Liriano*, 7 N.Y.3d 791 (2006). Petitioner did not seek a writ of certiorari from the United States Supreme Court.[4]

---

[4] The aforementioned procedural history makes clear that Petitioner's constitutional claim was exhausted via presentation to the highest state court, and it is therefore properly before this court. *See Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000).

## II. DISCUSSION

### A. Standard of Review

"Because a § 2254 petition seeks to overturn 'a presumptively valid judgment of conviction,' the petitioner bears the burden of proof throughout the habeas proceeding." *Pignataro v. Poole*, 2010 WL 2501009, at *1 (2d Cir. June 18, 2010) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990)). However, the court holds *pro se* Petitioner's pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and interprets the instant petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

"Federal habeas review is barred if the constitutional claim was denied by a state court on a state procedural ground that is both 'independent of the merits of the federal claim and an adequate basis for the court's decision.'" *Brown v. Ercole*, 353 F. App'x 518, 519 (2d Cir. 2009) (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989)). This is so even if the state court also rejected the merits of the claim in an alternative holding. *Harris*, 489 U.S. at 264 n.10; *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.").

"A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." *Dunman v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schulp v. Delo*, 513 U.S. 298, 321 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "'[A]ctual innocence means factual innocence, not mere

legal insufficiency.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The "adequate and independent" state ground bar may also be bypassed by a showing of good cause for the procedural default and resulting prejudice. *See Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

When a state court has adjudicated a petitioner's federal claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the scope of federal habeas review of state convictions to instances where the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable determination" is one in which "the state court indentifie[d] the correct governing legal principle from [the Supreme Court's] decision but unreasonably applie[d] the principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.

### B. Adequate and Independent State Grounds

The claims Petitioner raised on his direct appeal were identical to the ones he raises in the instant action. (*Compare* Pet. 6 *with* Def./Appellant's Br. 34.) As noted in Part I.B, *supra*, the

Appellate Division held that these claims were unpreserved for appellate review. *Liriano*, 27 A.D.3d at 578. Although the Appellate Division did not elaborate, its citations indicate that the claims were unpreserved because Petitioner's counsel did not make a contemporaneous objection. *See id.* (citing N.Y. CRIM. PROC. LAW § 470.05; *People v. Malave*, 7 A.D.3d 542, 542 (2d Dep't 2004)). Failure to comply with New York's contemporaneous objection law is an "adequate and independent" state ground for precluding federal habeas review. *See Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999); *see also Degrijize v. Artuz*, 134 F. App'x 460, 461 (2d Cir. 2005) (citing *Harris*, 489 U.S. at 263).

Petitioner does not set forth facts regarding any fundamental miscarriage of justice, nor does he claim actual innocence. *See Schulp*, 513 U.S. at 319; *see also Pignataro*, 2010 WL 2501009, at *1 (petitioner bears burden of proof throughout habeas proceeding). Petitioner also fails to address how he may have been prejudiced by his counsel's failure to comply with the state procedural rule. (*See generally* Pet.; Reply.) However, having reviewed the record (*see generally* Tr. 578–620), there appears to be some question as to whether Petitioner's trial counsel did in fact comply with the contemporaneous objection rule, as he objected to the prosecutor's summation a number of times. (*See, e.g.*, Tr. 584, 600, 604, 608–09, 618, 621.) Furthermore, notwithstanding Respondent's argument that these were not "specific" objections (*see* Resp. 2), it is clear that trial counsel was objecting to what he considered to be mischaracterizations of his defense (Tr. 584, 609, 621) and improper burden-shifting (Tr. 608, 621)—two of the very claims raised on direct appeal and before this court. Petitioner's trial counsel also adhered to the state procedural requirement of requesting a mistrial based on the foregoing, although it is unclear whether he also requested curative instructions beyond what the trial court provided *sua sponte*. (Tr. 621.)

In any event, "[t]he relevant question is not whether the state court was right or wrong in its decision, but rather whether its holding had a fair or substantial basis in state law." *Rhagi v. Artuz*, 309 F.3d 103, 107 (2d Cir. 2002) (citations and internal quotation marks omitted). Because there is at least some question as to whether the state court ruling had a "fair or substantial basis in state law," the court will examine the merits of Petitioner's constitutional claim, particularly in light of his *pro se* status. *See Haines*, 404 U.S. at 520; *Triestman*, 470 F.3d at 474; *see also Schulp*, 513 U.S. at 319 ("habeas corpus is, at its core, an equitable remedy").

### C.  Prosecutorial Misconduct Claim

"It is well settled that the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question." *Sims v. Ercole*, 2010 WL 1685434, at *9 (S.D.N.Y. Apr. 23, 2010) (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)); *see also United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989) ("The government has broad latitude in the inferences it may reasonably suggest to the jury during summation."). In order for an improper summation claim to warrant habeas relief, "the prosecutor's comments [must have] constituted more than mere trial error, and [instead have been] so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (citations omitted); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."). Only where "the improper statements cause substantial prejudice to the defendant" is due process violated. *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) (citation omitted); *see also Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1152 (1996). "In determining whether . . . misconduct amounted to substantial prejudice, we examine 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction

absent the improper statements.'" *Id.* (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990)); *see also Darden*, 477 U.S. at 182 (another factor in determining substantial prejudice is whether objectionable comment was invited by defense).

The court notes at the outset that, notwithstanding the impropriety of any of the prosecutorial statements at issue, the "certainty of conviction" in this case was very high. *Floyd*, 907 F.2d at 355 (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)). Petitioner was identified as the perpetrator by eyewitnesses to all four of the charged robberies. (*See* Tr. 24, 26, 59, 664–68, 125, 133, 136, 144, 192, 196–200.) Three of the victims had independent bases for recognizing Petitioner as they had seen him several times before their respective robberies, making their identifications of him even more compelling. (*See* Tr. 24, 121–22, 193.) Petitioner was caught leaving the scene of the fourth robbery, with a loaded gun and a large amount of cash. (*See* Tr. 201, 228–30, 247–50.) He also confessed to this final robbery (Tr. 344–45), and, although he maintained at trial that this confession was fabricated, the jury obviously chose not to credit his self-serving testimony. The totality of this evidence weighs heavily against any finding of substantial prejudice stemming from the prosecutor's summation. *See Bradley*, 918 F.2d at 343–44 (finding "clear evidence of guilt" even though witnesses did *not* identify defendant). Notably, the Appellate Division held, in the alternative, that any error in the prosecutor's summation was harmless in light of the overwhelming proof of Petitioner's guilt. *See Liriano*, 27 A.D.3d at 578.

With respect to the summation statements with which Petitioner takes issue, the court finds most of them to be fairly benign. For example, arguing that Petitioner "thought that he had it all figured out" and was "overly confident" (Tr. 578–79) hardly constituted an improper "appeal to passion, prejudice or sympathy." (Reply 4.) Indeed, far harsher characterizations have

survived habeas review. *See, e.g.*, *Garcia v. Greiner*, 2004 WL 943902, at *6 (E.D.N.Y. Apr. 28, 2004) (prosecutor's statement that a crime was "one of the most brutal, horrendous crimes imaginable" was "not constitutionally troublesome"). Similarly, while personally vouching for the truthfulness of a witness would have been improper, the prosecutor here merely argued that her witnesses had no reason to be untruthful. (*See* Tr. 582); *see also United States v. Rodriguez*, 587 F.3d 573, 583 (2d Cir. 2009) (rejecting similar defense argument where prosecutor had "merely invited the jury to consider the implausibility of [defendant]'s claim that the witnesses were all committing perjury"). Asking rhetorical questions about the prosecution witnesses, such as "Did they strike you [the jury] as people who had an ax to grind?" and "Did they strike you as people who would come in this courtroom and say what the defendant did unless, of course, it was him?" (Tr. 582; *see also* Reply 7, 10–11) was not inherently improper, and, indeed, may have served to properly draw the jury's attention to factors it may consider in its "singular role in evaluating credibility." *United States v. Arnau*, 80 F. App'x 697, 699 (2d Cir. 2003). Finally, the prosecutor's statement to the jury that, "[i]f you focus in on the evidence, then that would assure a quick conviction of this defendant" (Tr. 580–81) is simply akin to asking a jury "to find [a defendant] guilty as charged"—comments that do not warrant habeas relief. *See Vega v. Lord*, 2003 WL 21822636, at *4 (E.D.N.Y. July 7, 2003).

Petitioner contends that he never argued that the victim witnesses were lying in order to frame him, and instead argued that these witnesses' identifications were mistaken. (Tr. 600.) The prosecutor's characterization of his defense as one involving him being "framed" was therefore, he argues, improper. (*See* Tr. 586, 608–09.) While there may be some merit to this argument, any mischaracterization by the prosecutor was mitigated by the fact that Petitioner *did* clearly argue that the *law enforcement* witnesses were framing him. (*See* Tr. 480.)

The court does find some of the prosecutor's summation comments to be improper, albeit not to the extent of constituting "severe misconduct." Regardless, any prejudice Petitioner may have suffered as a result of these comments was largely mitigated by the "measures adopted to cure the misconduct." *Modica*, 663 F.2d at 1181. For example, when the prosecutor stated that "[Petitioner] should have been able to remember as much detail[] as [the prosecution witnesses] could," the trial court immediately interjected that there is "[n]o obligation on the part of the defendant to remember anything." (Tr. 608.) Similarly, although it was improper for the prosecutor to imply that guilt as to one of the robberies was indicative of guilt as to all of them (*see* Tr. 617–19), the trial court immediately instructed the jury *sua sponte* that "the People have the burden of proving each and every robbery based on the evidence or lack of evidence as it relates to that particular robbery" (Tr. 618), and repeated this instruction twice more at the close of the case. (*See* Tr. 627, 637.) Indeed, through a combination of limiting instructions and final jury charges, the trial court addressed virtually every issue raised by Petitioner in the instant action. (*See, e.g.*, Tr. 659 ("Do not let sympathy or prejudice sway your minds in any way in analyzing the testimony"); Tr. 629 ("It is [the jurors'] duty to sort out the credible testimony and disregard any testimony which is not credible"); Tr. 624–25 (burden of proof always on prosecution); Tr. 540 (summations are not evidence).) As "juries are presumed to follow their instructions," *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) (internal quotation marks omitted), the court finds that the "curative measures" factor also weighs heavily against a finding of substantial prejudice.

As a final matter, at least some of the challenged prosecutorial comments were made in response to defense arguments, lessening any prejudice that might otherwise have resulted.[5] For

---

[5] *See Darden*, 477 U.S. at 182. Note that in New York State courts, defense summations take

example, defense counsel argued in his summation that, following the arrest, the police officers falsely accused Petitioner of the first three robberies in order to clear four open cases at once and "impress the supervisors." (Tr. 576.) "[T]he government is allowed to respond to an argument that impugns . . . the integrity of its case . . . and when the defense counsel have attacked the . . . credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (citations and internal quotation marks omitted). The court finds that the prosecutor's comments regarding her witnesses all meet this standard.

---

place before those of the prosecution.

## III. CONCLUSION

The totality of the factors considered pursuant to clearly established federal law do not support a finding that the prosecutor's summation substantially prejudiced Petitioner. As such, Petitioner was not denied due process of law by said summation, and, thus, habeas relief is denied in its entirety. Petitioner is further denied a certificate of appealability, as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2010

/s/
DORA L. IRIZARRY
United States District Judge